IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

DAVID SAULSBERRY,

Plaintiff,                                        Case No.  21-CV-62362

vs.                                               **CIVIL COMPLAINT**

BRITNEY ELDER,                                    **DEMAND FOR JURY TRIAL**

a/k/a "FTN Bae",

Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DAVID SAULSBERRY ("Plaintiff"), hereby sues Defendant, BRITNEY

ELDER ("Defendant"), a/k/a "FTN Bae", an individual. In support, Plaintiff alleges as follows:

## I. THE PARTIES

*A. Plaintiff*

1. Plaintiff is a major recording artist signed to a major music label who performs under the name "Doodie Lo."

2. Plaintiff is a resident of the State of Illinois.

*B. Defendant*

3. Defendant is a social media adult model and influencer with almost 600,000 followers on Instagram and Twitter and is an independent music artist known by the moniker "FTN Bae."

4. Defendant manages and controls all of her social media accounts directly.

5.  Defendant is a resident of the State of Florida.

## II. NATURE OF ACTION

6.  Plaintiff seeks to recover damages for the defamatory statements made by Defendant.

7.  The Defendant disparaged the reputation and character of Plaintiff on the public forums Instagram and Twitter on October 27, 2021 when Defendant published a doctored recording of her minor son crying and in obvious duress stating that Plaintiff had sexually abused him.

8.  The Defendant had made several recordings of her minor son prior to publishing the recording on October 27th which Defendant sent to Plaintiff taunting him with the various recordings prior to her publication on October 27th.[1]

9.  Defendant made statements concerning Plaintiff to the public at large which were false, defamatory and injurious to Plaintiff's professional and personal reputation.

10. Defendant made false statements concerning Plaintiff and designed to injure the Plaintiff such as:

    a.  The Plaintiff being a homosexual child abuser,

    b.  The Plaintiff sexually abusing her son with a foreign object, and

    c.  The Plaintiff inserting a foreign object, allegedly three nails welded[2] together, into her son's rectum.

---

[1] Plaintiff is in possession of, at minimum, 4 four separate recording of Defendant manipulating her son and telling him what to and not to say that Defendant sent to the Plaintiff between October 15th and 27th. Plaintiff can provide these recordings at any time in any manner preferable to the Court.

[2] Defendant in her posts says "welted" but due to limited vocabulary wrote the incorrect term. Defendant advanced and alleged Plaintiff used some type of fusion technique to bind three screws and then took those welted/welded screws and inserted them in the rectum of Defendant's son.

11. This action follows common law tort claims under Florida law including libel, trade libel, slander, defamation, tortious interference with business relations, and infliction of emotional distress.

12. In order to fully compensate Plaintiff for the loss, perpetual reputational harm, emotional distress, and mental anguish suffered as a result of Defendant's false statements and attacks, this action seeks actual damages in excess of Five Million Dollars ($5,000,000) and punitive damages in excess of Ten Million Dollars ($10,000,000)

### III. JURISDICTION AND VENUE

**13.** This Court has original jurisdiction under 29 U.S.C. § 1332 because there is diversity between the parties and the amount in controversy exceeds $75,000.00.

**14.** Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in this jurisdiction.

15. Plaintiff has suffered substantial and perpetual reputational and emotional harm in this district.

16. Defendant caused harm to Plaintiff in this jurisdiction but also directed her actionable statements to Plaintiffs' current and future customers in the Southern District of Florida.

### IV. JURY DEMAND and CLAIM FOR PUNITIVE DAMAGES

17. Plaintiff demands a trial by jury in this action.

18. Plaintiff also brings a claim for punitive damages against the Defendant for all counts.

### V. FACTUAL BACKGROUND

19. Plaintiff met Defendant online in May 2021.

20. Plaintiff and Defendant began a romantic involvement shortly thereafter.

21. The relationship between Plaintiff and Defendant was casual but Defendant wanted a more serious relationship with Plaintiff.

22. Due to Plaintiff's hectic lifestyle and overall mindset Plaintiff declined to be in a serious relationship with Defendant.

23. In mid-September, 2021 after Defendant visited Plaintiff in Atlanta[3], where Plaintiff resides for work, Plaintiff ended the relationship permanently with the Defendant.

24. Defendant did not take this well and began her intentional campaign to defame and destroy Plaintiff for rejecting her.

25. Defendant alleged on October 1st her son told her a "story" that he was sexually assaulted with screws inserted in his anus by another minor child "Alex."

26. Initially, Defendant used this "story" as an excuse to begin communication with Plaintiff where she communicated with Plaintiff her son informed her he had been sexually abused.

27. Plaintiff encouraged the Defendant to have her son checked out at a hospital as he had family who had been sexually abused and that any potential sexual abuse should be immediately confirmed by medical professionals.

28. Defendant has always asserted and it is undisputed that Defendant's minor child's initial account to the Defendant was that "Alex" assaulted him. It is further undisputed that the Defendant was the one who advanced, and otherwise encouraged, to her minor son that

---

[3] Defendant posted, and the post remains on Instagram @ftnbae_ dated September 15th of the Defendant in the bathroom of Plaintiff's residence. This post remains on Defendant's Instagram page despite Defendant making defamatory and slanderous statements against Plaintiff.

the Plaintiff had assaulted him and not the "Alex" the child initially disclosed. (Exhibit "A")

29. On October 3rd the Defendant took her son to his first football game, as evidenced in her Twitter post. (Exhibit "B")

30. After the football game Defendant took her son to the hospital for an evaluation regarding the sexual abuse, 2 days after the child initially reported the abuse and after the child had played in a physical game of football mere hours prior to the medical exam.

31. After the medical exam Defendant called Plaintiff to inform him that the hospital found nothing wrong with the child during their examination.

32. Plaintiff then returned to his dismissive behavior of Defendant as he had previously ended his dealing with her in September.

33. Being further angered by Plaintiff's continued rejection, Defendant then began contacting Plaintiff and alleging that Plaintiff and not "Alex", as alleged by the minor child, was the one who assaulted the minor child.

34. Plaintiff vehemently denied such allegations and questioned Defendant's motive for now changing the narrative of who assaulted her son, despite there being no evidence that the child was even assaulted in the first place.

35.  Plaintiff requested the Defendant contact police and that Plaintiff would participate in any request to clear his name of any wrongdoing and affiliation with such a heinous crime.

36. Defendant began to torment Plaintiff sending him various audio recordings of Defendant interrogating her son over the alleged sexual assault.[4]

37. Defendant also sent Plaintiff a document for release of medical records from the Broward County Sheriff's office. (Exhibit "C")

38. Defendant then told Plaintiff that the medical release form was fraudulent and that she sent it in an effort to get a rise out of the Plaintiff and that there was no complaint filed or otherwise any reason to contact the Broward Sherriff.

39. Defendant used her social media, Instagram and Twitter, to set the scene for the big reveal the entire month of October.[5]

40. On October 22, 2021 Defendant tweeted "I think everyone should know who he is." October 22nd is the Plaintiff's birthday which the Defendant undoubtedly knew and wrote this tweet in an effort to harass and otherwise ruin Plaintiff's birthday. (Exhibit "D")

41. Defendant then continued to tweet subliminal messages regarding the situation culminating in the recording Defendant posted on October 27th, 2021 on both Instagram and Twitter.  To date the posts Defendant made falsely accusing the Plaintiff of a infamous crime are the highest liked and commented posts she has ever received. Defendant's Instagram post has been viewed over one million times and her Twitter post was viewed almost 40,000 times far surpassing anything else Defendant has ever posted on any of her social platforms. (Exhibit "E")

---

[4] Plaintiff is in possession of such recordings and will disclose them to the Court upon demand.
[5] Plaintiff has screen recorded and has for evidence ALL of Defendant's tweets for the month of October and is available upon demand.

*THE FIRM- "FROM THE PEOPLE, FOR THE PEOPLE"*

## VI.    HARM TO PLAINTIFF

42. The publication of these statements by Defendant directly and proximately caused substantial and permanent damage to Plaintiff.

43. As a direct and proximate result of Defendant's publication of these statements:

    a.   Plaintiff suffered permanent, perpetual harm to his reputation,

    b.   Plaintiff suffered and will continue to suffer emotional and mental distress,

    c.   Plaintiff forever lost clients, business opportunities and lifetime fanbase value, and

    d.   Plaintiff suffered financial damage.

44. Defendant published her statements with both actual malice and common law malice, thereby entitling Plaintiff to an award of punitive damages

45. As a direct and proximate result of these statements, Defendant created a false reputation for Plaintiff, which is publicly accessible. This false reputation is publicly accessible on Instagram, Twitter, YouTube, Google and other search engines, with a simple search of either Plaintiff or Defendant's online names ("Doodie Lo" and/or "FTN Bae").

46. As a direct and proximate result of these statements, third parties were falsely convinced of said false reputation.

47. Plaintiffs suffered severe economic injury from Defendants tortious comments.

48. Plaintiff's album release was severely impacted by Defendant's tortious comments, Plaintiffs was unable to take advantage of further beneficial externalities afforded by his profession as a musician.

49. All conditions precedent to this lawsuit have occurred, been satisfied or been waived.

## VII. COUNTS

## COUNT 1 - LIBEL PER SE

50. Plaintiff reasserts and incorporates by reference paragraphs 1 through 49 in this Complaint as if fully restated herein.

51. Defendant's written statements published on her Instagram and Twitter pages on October 27, 2021 were libelous per se as the statements contained false and inflammatory accusations.

52. Defendant's written statements published on her Instagram and Twitter pages on October 27, 2021 considered alone without innuendo overtly and blatantly accused the Plaintiff of the crime of child sexual assault and battery, a criminal felony and certainly an infamous crime.

53. Defendants' statements and publications described herein concerned Plaintiff and were false.

54. Defendant's statements, has certainly, subjected Plaintiff to hatred, distrust, ridicule contempt or disgrace as accusations of child sexual abuse often do. Plaintiff has received death threats and is unable to perform or otherwise make a living due to Defendant's statements.

55. Defendant's statements injured Plaintiff in his profession as a music recording artist as Plaintiff has been unable to release his album or continue to travel performing on tour as Plaintiff was engaged in prior to Defendant's statements.

56. Defendant's statements were widely published and not privileged in any manner.

57. Defendant's statements were made with reckless disregard of their truth or falsity and with malice.

58. Defendant's statements forever falsely taint and permanently damage Plaintiff.

59. By reason of these acts, Plaintiffs has suffered substantial injury, including but not limited to financial loss in excess of $5 million. By reason of Defendant's libel per se, Plaintiffs is entitled to all actual, compensatory, and punitive damages proved at the time of trial.

60. Defendant knew that her allegations were false and made these statements with express and implied malice. Defendant knew or should have known that such statements were false when she published them. Nonetheless, Defendant published such false statements recklessly and in conscious disregard of the truth. Further, Defendant committed such acts maliciously, oppressively, and fraudulently, with ill will and an evil intent to defame and injure Plaintiff. Plaintiff, therefore, seeks an award of actual, compensatory, and punitive damages in an amount to be proven at trial, but not less than $10 million.

**WHEREFORE,** Plaintiff demands judgment against Defendant, for monetary damages, including punitive damages and for such further relief as the Court deems just and proper.

## COUNT 2 - TRADE LIBEL

61. Plaintiff reasserts and incorporates by reference paragraphs 1 through 49 in this Complaint as if fully restated herein.

62. As set forth above, Defendant published falsehoods, which were, and are, openly and freely communicated to any third party visiting the internet on YouTube, Instagram, Twitter, Blog sites The Shade Room, DJ Akademiks and an online search on any search engine of either "Doodie Lo" or "FTN bae."

63. These falsehoods are directed at Plaintiffs' customers and those considering buying music or booking performances from Plaintiff.

64. Defendant knew or reasonably should have known that her efforts setting up the information and reveal on her online platforms, including her intentional and explicit use of falsehoods, would likely result in inducing others not to deal with Plaintiff.

65. In fact, Defendant's falsehoods play a material and substantial part in inducing others not to deal with Plaintiff as Plaintiff has lost performance and contract opportunities due to Defendant's published falsehoods.

66. Plaintiff suffered injury because of Defendant's publication of false statements, which tends to be prejudicial against Plaintiffs' conduct of a trade or business, tends to disparage Plaintiffs' products, and tends to deter third persons from dealing in business with Plaintiff.

67. As a result of Defendant's publication of the false and defamatory matter, Plaintiff was greatly injured in reputation and credit and special damages were proximately caused as a result of Defendant's falsehood. Plaintiffs' business has suffered great loss of customers, fan base, and has been deprived of great gains and profits, which otherwise Plaintiff would have made, and has otherwise sustained loss and injury, in an amount to be proven but regardless exceeding $1,000,000.

68. Defendant's conduct complained of herein is malicious, fraudulent, knowing, willful, and deliberate.

**WHEREFORE,** Plaintiff demands judgment against Defendant, for monetary damages, including punitive damages, in an amount to be determined, and for such further relief as the Court deems just and proper.

## COUNT 3 - SLANDER PER SE

69. Plaintiff reasserts and incorporates by reference paragraphs 1 through 49 in this Complaint as if fully restated herein.

70. Defendant's statements and publications described herein concerned Plaintiff and were false.

71. Defendants' written and published statements were slanderous per se as they contained specific statements designed to negatively impact Plaintiff's personal and professional reputation, as well as his standing within the music industry.

72. Defendant's statements were widely published and not privileged in any manner.

73. Defendant's statements were made with reckless disregard of their truth or falsity and with malice.

74. Defendant's statements forever falsely taint and permanently damage Plaintiff.

75. The defamatory, slanderous and libelous statements made by Defendant caused substantial harm to the personal and professional reputation of plaintiff and caused substantial economic damages to the Plaintiff.

**WHEREFORE,** Defendant should be found to have slandered the Plaintiff causing damages. Plaintiff requests judgment against the Defendant for slander and an award of compensatory damages, including consequential and incidental damages, interest and costs incurred as a result of bringing this action, and for any other relief as the Court finds just and proper.

## COUNT 4- DEFAMATION PER SE

76. Plaintiff reasserts and incorporates by reference paragraphs 1 through 49 in this Complaint as if fully restated herein.

77. Defendant defamed Plaintiff by stating Plaintiff sexually assaulted her son even after Defendant's son told her he had been assaulted by someone else. It is important to note that at no time, prior to the Defendant's coercion, did the minor child disclose to Defendant that Plaintiff had assaulted him.

78. Defendant falsely communicated in writing, and published online, that Plaintiff had sexually assaulted her son despite the Defendant's son telling her otherwise and there being no physical evidence of the minor child even being assaulted in the first place.

79. The defamatory statements made by Defendant about Plaintiff subjected Plaintiff to hatred, distrust, ridicule, contempt or disgrace, and injured Plaintiff in his profession.

80. The defamatory, slanderous and libelous statements made by Defendant caused substantial harm to Plaintiff personal and professional reputation impacted his music career and caused substantial economic damages to the Plaintiff.

**WHEREFORE,** Defendant should be found to have defamed Plaintiff. Plaintiff demands judgment against Defendants, for damages, including punitive damages, in an amount to be determined, and for such further relief as the Court deems just and proper.

## COUNT 5 - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

81. Plaintiff reasserts and incorporates by reference paragraphs 1 through 49 in this Complaint as if fully restated herein.

82. At the time of Defendant's wrongful acts as alleged herein, Plaintiffs had business relations with various parties including record labels and other recording artist for services, business relations with his current label and obligations therein, as well business relations with prospective parties who wished to engage in procuring the Plaintiff in the entertainment industry.

83. Defendant was aware of the nature of these relationships due to Defendant's personal relationship with Plaintiff as well as Plaintiff's publicized connections and affiliations through his label.

84. Defendant intentionally and unjustly interfered with Plaintiffs' existing and prospective business relations by falsely publicly accusing Plaintiff of sexually assaulting her minor son.

85. As a direct and proximate result of Defendant's interference, Plaintiff has suffered substantial monetary injury. Defendant committed such acts maliciously, oppressively, and fraudulently, with ill will and an evil intent to damage Plaintiff. Plaintiff, therefore, reserves the right to seek an award of actual, compensatory, and punitive damages in an amount to be proven at trial, but not less than $10 million.

**WHEREFORE,** Plaintiff demands judgment against Defendants, for monetary damages, including punitive damages, in an amount to be determined, and for such further relief as the Court deems just and proper.

### COUNT 6 - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

86. Plaintiff reasserts and incorporates by reference paragraphs 1 through 49 in this Complaint as if fully restated herein.

87. Defendant's libel, slander and defamation of Plaintiff in the manner set forth above constitutes deliberate or reckless infliction of mental suffering upon Plaintiff.

88. Defendant's defamation of Plaintiff in the manner set forth above constitutes outrageous conduct.

89. Defendant's statements and conduct were extreme and outrageous and not one of any reasonable person.

90. Defendant acted recklessly and intentionally.

91. Defendant's conduct complained of herein was outrageous and went beyond all bounds of decency, and is regarded as odious and utterly intolerable in a civilized community.

92. Defendants outrageous conduct as described above caused and continues to cause Plaintiff severe emotional distress.

93. Defendant knew and intended Plaintiff suffer severe emotional distress as a result of her extreme and outrageous statements and conduct.

94. As a result of Defendant's extreme and outrageous conduct, Plaintiff was, is, and with a high degree of likelihood will continue to be emotionally distressed due to Defendant's statements.

95. As a result of Defendant's extreme and outrageous conduct, Plaintiff has suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment and humiliation.

**WHEREFORE,** Defendant should be found to have intentionally caused emotional distress to Plaintiff. Plaintiff requests judgment against the Defendant for the intentional infliction of emotional distress and an award of compensatory damages, including consequential and

incidental damages, interest and costs incurred as a result of bringing this action, and for any other relief as the Court finds just and proper.

## VIII.   FINAL PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court:

(a)  Enter judgment against Defendant for substantial compensatory and actual damages in an amount not less than $5,000,000,

(b)  Enter judgment against Defendant for treble and/or punitive damages in an amount not less than $10,000,000,

(c)  Order Defendant to pay Plaintiffs' reasonable attorneys' fees, expenses and all costs,

(d)  Order trial by jury on all triable issues, which the Plaintiffs hereby demand consistent with Federal Rule of Civil Procedure 38,

(e)       Award damages, to be determined at trial, to compensate Plaintiff for all non-monetary and compensatory harm, including, without limitation, compensation for the libel and defamation *per se* of Plaintiff's complaint and emotional pain and suffering, and

(f)       Such other and further relief as the Court may deem just and proper including equitable relief.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via e-mail generated by the Florida Court E-Filing Portal this 17th day of November, 2021, upon all of record.

*Ariel E. Mitchell, Esq.*
Ariel E. Mitchell, Esq.

*THE FIRM- "FROM THE PEOPLE, FOR THE PEOPLE"*

Florida Bar No. 125714
P.O. Box 12864
Miami, FL 33101
(305) 903-5835
Email service: ariel@arielesq.com

## **VERIFICATION CLAUSE**

I, David Saulsberry, state that the allegations are true and correct as listed above on this 17th day of November 2021.

_____          _____
David Saulsberry                                                    Date                11/17/2021

# EXHIBIT
# "A"



New Recording 9.m4a

Hey my name is Britney i got your number from someone you personally know. i just wanted to shed light on to what's been going on. i was in a relationship with Doodie(david) & i found out (oct 1) after 2 months of my son pooping on himself so bad that i had to resort to diapers that doodie sexually assaulted my son. He welted 3 screws together (from my tool box) to make it 1 and shoved them up my sons butt (my son had hid the screws in the backyard so "he couldn't find them again" ofc my son was able to walk me outside to where he put it & security cameras show when he went outside that night to throw it outside) This happened  August 6th when he was at my house in Florida he was supposed to leave this day but he missed his flight supposedly he claimed he "feel asleep in the airport" and he woke up a hour after his flight left (i dropped to the airport) i had a show in orlando that night but i told him he could sleep at my house until his am flight. he was at my house with





show in orlando that night but i told him he could sleep at my house until his am flight. he was at my house with my roommate Ashanti and my son Wesley & his baby girl cousin Alex who is 3. i will be honest & say when my son first started telling me about it he said it was baby alex who did it. but no one was buying that including me she's a little girl the whole story (which is way more detailed) is unlikely she could be physically capable & that's when i HAD TO ask if it was David who really did it because there was only 3 people in my house. he told me the truth that night and has had the same story since then & his reasoning for lying on her originally was because he was "scared" & i believe that and it makes since. my son isn't a actor and wouldn't have any reason to say it was him. he liked david david created a bond with my son which confuses him. As a single mother i'm doing everything in my power to make sure my son voice gets heard and shit don't get pushed under a rug because he's young & these cases slate fragile. so i am my sons mouth piece & people need to know that's THE LEAST i can do for me & my child.



EXHIBIT

"B"



# EXHIBIT

# "C"



**BROWARD SHERIFF'S OFFICE**
**RELEASE OF MEDICAL RECORDS AND INFORMATION**
**INCLUDING PRIVILEGED AND CONFIDENTIAL INFORMATION**

[ ] Drug and Alcohol Use        [ ] Mental Health        [ ] HIV/AIDS

I, Britney Alexis Elder _____ (print first, middle and last name), **on my own**
behalf or on behalf of Wesley Elder _____ (print first, middle and last
name), who is my child _____ (fill in:  child or ward*), hereby consent to and authorize
the Northwest Broward Medical Center _____ (fill
in name of the provider) hospital, my treating and consulting physicians, and each of their
nurses, health care practitioners and staffs (collectively "treating facilities and healthcare
practitioners") to   release my medical records and information for the treatment dates of
October 3, 2021 _____ to the Sheriff of Broward County or The Office of the State Attorney
for the 17th Judicial Circuit or designee at █████████████████████████ 12 _____
(fill in address where the records should be sent).  This Release of Medical Records and
Information is intended to allow the release of all information including protected health
information as defined under the Health Insurance Portability and Accountability Act of 1996
(HIPAA).  This Release of Medical Records and Information shall be valid for a period of one (1)
year from the date of its execution.  I request that the custodian of any medical record or
information consent to the inspection, examination, or photocopying of such records.

I further consent to the release of the medical records and information checked above
which are otherwise privileged and confidential and would not be released without my express
and informed consent.  I understand that these records will not be released to persons and
agencies other than those designated by me or those provided for by law.

I agree to release records without limitation.

I understand that I may revoke this Release of Medical Records and Information at
anytime by notifying my treating facilities or health care practitioners.  I understand that once my
medical records and information have been released, that the treating facilities and healthcare
practitioners have no control over the use of the already released copies.

I hereby release any such hospital, clinic, medical clinic, physician office, any other
medical facility, doctor, physician and health care practitioner from any liability which may arise
as a result of by authorized release of these records.

**This Release of Medical Records and Information is voluntarily, willingly, and knowingly
executed without any element of force, fraud, deceit or duress.**

Signature:   _____

EXHIBIT

"D"



EXHIBIT

"E"



