UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-62362-SMITH/VALLE

DAVID SAULSBERRY,

    Plaintiff,

v.

BRITNEY ELDER
a/k/a FTN Bae,

    Defendant.

_____

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

THIS MATTER is before the Court upon Defendant's Motion to Dismiss (ECF No. 37) (the "Motion"). The parties elected to have a U.S. Magistrate Judge decide pretrial motions. *See* (ECF No. 15). Accordingly, having reviewed the Complaint (ECF No. 35), the Motion, the Response (ECF No. 38), and Defendant's Reply (ECF No. 41), and being otherwise duly advised in the matter, the Motion is **GRANTED IN PART AND DENIED IN PART.**

    **I.**    **BACKGROUND**

The Court recently summarized the allegations in this case in a prior Omnibus Order on Motions Regarding Disqualification of Counsel and Motion to Withdraw as Defense Counsel, which is incorporated by reference. *See* (ECF No. 51). In brief, Plaintiff David Saulsberry filed a First Amended Complaint and Demand for Jury Trial against Defendant Britney Elder asserting six counts involving alleged defamatory statements. *See generally* (ECF No. 35) (the "First Amended Complaint"). According to the First Amended Complaint, Plaintiff is a major recording artist signed to a major music label, performing under the name "Doodie Lo." *Id.* ¶ 1. Defendant, in turn, is a social media adult model and influencer, known as "FTN Bae." *Id.* ¶ 3.

In response to the First Amended Complaint, Defendant has filed the instant Motion seeking dismissal of all six counts. This Order addresses each of the counts.

## II. DISCUSSION

### A. Legal Standard for Motion to Dismiss

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court's review of the sufficiency of the complaint is limited to the allegations presented in the complaint and attached exhibits. *See GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). Moreover, all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citations omitted); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citations omitted). Nevertheless, while a plaintiff need not provide "detailed factual allegations," the allegations must contain more than "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555 (citations and quotations omitted). Conclusory allegations, unwarranted factual deductions, and legal conclusions masquerading as facts may result in dismissal. *United States ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 792-93 (11th Cir. 2014) (citation omitted).

### B. The Allegations Generally

Plaintiff's First Amended Complaint alleges six counts: libel per se (Count 1); trade libel (Count 2); slander per se (Count 3); defamation per se (Count 4); tortious interference with business relations (Count 5); and intentional infliction of emotional distress (Count 6). *See generally* (ECF No. 35). In particular, Plaintiff alleges that on October 27, 2021, Defendant "published a doctored recording of her minor son crying . . . [,] stating that Plaintiff had sexually abused him." *Id.* ¶ 7.

Thereafter, on January 7, 2022, Defendant allegedly continued to defame Plaintiff in a police report in which Defendant alleged penile penetration of her minor son as opposed to Defendant's initial defamatory statement that Plaintiff sexually assaulted Defendant's son by inserting foreign objects into his rectum.  *Id.* ¶ 9.  Subsequently, Defendant made an "apology video" on Instagram, which she later recanted.  *Id.* ¶¶ 10, 12.  Lastly, Plaintiff alleges that Defendant continued to defame Plaintiff by stating that Plaintiff had not taken a lie detector test.  *Id.* ¶ 15.  Plaintiff's alleged damages include reputational harm, emotional distress, and mental anguish, for which Plaintiff seeks more than $10 million in actual damages and more than $20 million in punitive damages.  *Id.* ¶ 21.  Defendant moves to dismiss each count procedurally and on the merits.

    1. *Plaintiff Provided Notice under Florida Statute § 770.01*

Procedurally, Defendant alleges that Plaintiff has failed to comply with the notice requirements of Florida Statute § 770.  *See generally* (ECF No. 37).  More specifically, § 770 governs civil actions for defamation (including libel and slander) and requires that, at least five days before instituting an action, plaintiff serve defendant in writing, specifying the statement that plaintiff alleges to be false and defamatory.  Fla. Stat. § 770.01.  In response to the Motion, Plaintiff attaches an October 28, 2021 letter addressed to Defendant purportedly sent via email and overnight mail, in which Plaintiff (through counsel) advises Defendant of Plaintiff's intent to pursue a civil action for defamation and libel.  *See* (ECF No. 38-1 at 2-14) (the "Notice").  In her reply, Defendant denies having received the Notice and argues that there is no receipt or other proof of delivery in the record.  (ECF No. 41 at 1).

Although Defendant is correct that Plaintiff has not filed proof of delivery of the Notice, Plaintiff's counsel is an officer of the Court and has a duty of candor to this tribunal.  *McCrory v. Costco Wholesale Corp.*, 584 F. Supp. 3d 1091, 1095 (S.D. Ala. 2022).  Thus, without more, the undersigned will not question the authenticity of the Notice.  Additionally, for purposes of

3

determining the Motion, the Court will accept all factual allegations as true and will draw all reasonable inferences in Plaintiff's favor. Given this liberal construction, the Court finds that the Notice filed with Plaintiff's Response to the Motion satisfies the notice requirement of Florida Statute § 770.

2. *The First Amended Complaint is Not Premature or Barred by Statute*

Defendant also argues that the First Amended Complaint is premature because the Broward Sherriff's Office ("BSO") is still investigating the allegations of Plaintiff's penile penetration of Defendant's minor son. (ECF No. 37 at 9). Defendant, however, provides no evidence of any continuing investigation.[1] Furthermore, Defendant fails to explain how any such investigation would preclude a claim of defamation/libel against Defendant regarding allegations that Plaintiff sexually abused Defendant's minor son by inserting foreign objects into his rectum. Thus, the undersigned is unpersuaded by Defendant's argument that the Fist Amended Complaint is premature.

Defendant also argues that Plaintiff's First Amended Complaint fails procedurally under Florida Statute § 768.295. *Id.* at 9-10. Section 768.295 prohibits strategic lawsuits against public participation ("Florida's Anti-SLAPP Statute"). More specifically, Florida's Anti-SLAPP Statute prohibits a person from filing a cause of action that is: (i) "without merit;" and (ii) "primarily" because the defendant "exercised the constitutional right of free speech in connection with a public issue." *Bongino v. Daily Beast Co.*, No. 19-CV-14472, 2021 WL 4976287, at *4 (S.D. Fla. Feb. 9, 2021), *report and recommendation adopted*, 2021 WL 4316099 (S.D. Fla. Sept. 23, 2021). Defendant, however, fails to support any of the statute's elements or provide evidence that Defendant was exercising her constitutional right to free speech in connection with a public issue. Accordingly, the undersigned rejects Defendant's argument that Florida's Anti-SLAPP Statute precludes the claims in

---

[1] Plaintiff denies knowledge of any investigation beyond the one that the State Attorney's Office already "declin[ed] to prosecute." (ECF No. 38 at 5); *see also* (ECF No. 38-1 at 9-12).

the First Amended Complaint. *See, e.g.*, *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (arguments raised "in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (citation omitted).  The Court next considers the Motion on the merits.

    3.  *Counts 1 (Libel Per Se), 3 (Slander Per Se), and 4 (Defamation Per Se)*

To state a claim for common-law defamation under Florida law,[2] a plaintiff must allege that: (i) the defendant published a false statement; (ii) about the plaintiff; (iii) to a third party; (iv) with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; and (v) that the falsity of the statement caused injury to the plaintiff. *Wallis v. Cueto*, No. 17-CV-21014, 2017 WL 6388914, at *3 (S.D. Fla. Aug. 9, 2017) (citing *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015)).  In a defamation per se action, the plaintiff does not need to show special damages. *Alan*, 604 F. App'x at 865 (citation omitted).  Per se defamatory statements are "so obviously defamatory" and "damaging to reputation" that they "give[] rise to an absolute presumption both of malice and damage." *Id.* Nevertheless, if the plaintiff is a public figure, plaintiff must also allege that defendant published the defamatory statement with actual malice. *Wallis,* 2017 WL 6388914, at *3 (citing *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1250 (S.D. Fla. 2014), *aff'd* (11th Cir. 2015)) ("If the plaintiff bringing a defamation claim is a public figure, he or she must also demonstrate by clear and convincing evidence 'actual malice' by the person publishing the statement.").

---

[2] Plaintiff is a resident of Illinois and Defendant is a resident of Florida. (ECF No. 35 ¶¶ 2, 5).  Thus, Florida law applies. *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011), *certified question answered*, 107 So. 3d 362 (Fla. 2013) ("As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law.").

Furthermore, a plaintiff may pursue a defamation per se claim under a theory of slander per se or libel per se. *Klayman*, 22 F. Supp. 3d at 1247. "Slander" typically refers to defamatory spoken words, whereas "libel" refers to written defamatory statements. *See Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999) (citation omitted). Slander per se is actionable without a showing of special damages if it imputes to another: (i) a criminal offense amounting to a felony; or (ii) conduct, characteristics, or a condition incompatible with the proper exercise of an individual's lawful business, trade, profession, or office. *Klayman v.* 22 F. Supp. 3d at 1247. Conversely, a written publication constitutes libel per se if it: (i) charges that a person has committed an infamous crime; (ii) charges a person with having an infectious disease; (iii) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (iv) tends to injure one in the individual's trade or profession. *Klayman,* 22 F. Supp. 3d at 1247; *see also Oxebridge Quality Res. Int'l, LLC v. Guberman PMC, LLC*, No. 20-CV-2176-CEH-SPF, 2022 WL 2291680, at *6 (M.D. Fla. June 24, 2022); *Blake v. Giustibelli*, 182 So. 3d 881, 884 (Fla. DCA 2016). A written publication constitutes libel per se if "when considered alone without innuendo," it "tends to injure one in his trade or profession." *Oxebridge*, 2022 WL 2291680, at *6. When determining whether a publication is libelous per se, the court may consider only the "four corners of the publication," and its injurious nature must be apparent from the words in the statement itself. *Oxebridge Quality Res. Int'l*, 2022 WL 2291680, at *6. The Court should not interpret the language "in the extreme," but rather construe it "as the common mind would naturally understand it." *Id.* at *6 (citations omitted). At the motion to dismiss stage, the Court may dismiss for failure to state a claim upon which relief may be granted only where the statement "could not possibly have a defamatory or harmful effect." *Id.* The Court considers the allegations of the First Amended Complaint against this legal backdrop.

The allegations of Counts 1, 3, and 4 all allege a theory of defamation per se. More specifically, in Count 1 (libel per se), Plaintiff alleges that, through Defendant's statements on

Instagram and Twitter, on October 27, 2021, January 7, 2022, and January 20 and 21, 2022, Defendant falsely communicated in writing and published online that Plaintiff had sexually assaulted her minor son—blatantly accusing Plaintiff of sexual assault and battery, a criminal felony and infamous crime. *See* (ECF No. 35 ¶¶ 65, 66). Plaintiff also alleges that Defendant published her statements with reckless disregard for their truth and with malice, causing Plaintiff severe permanent damage and substantial injury, including financial loss in excess of $10 million. *Id.* ¶¶ 71-73. Plaintiff further alleges that Defendant committed these acts maliciously with ill will and an evil intent to defame and injure Plaintiff. *Id.* ¶ 74. Plaintiff incorporates the prior allegations including statements by Defendant that Plaintiff is a homosexual child abuser, who sexually abused Defendant's son by inserting a foreign object into her minor son's rectum or penile penetration. *Id.* ¶¶ 19(a)-(d).

In Count 3 (slander per se), Plaintiff again incorporates the prior allegations of the First Amended Complaint and further asserts that Defendant's statements were: (i) false; (ii) had a negative effect on Plaintiff's personal and professional reputation, as well his standing within the music industry; (iii) were widely published and not privileged; and (iv) forever falsely taint and permanently damage Plaintiff. *Id.* ¶¶ 83, 84, 85, 88. Plaintiff also alleges that Defendant's statements were made with reckless disregard of their truthfulness or falsity and with malice. *Id.* ¶ 87.

In Count 4 (defamation per se), Plaintiff again incorporates the prior allegations of the First Amended Complaint and further asserts that: (i) Defendant had falsely written and published online that Plaintiff had sexually assaulted Defendant's son even though the minor son said otherwise and there was no physical evidence of a sexual assault; (ii) the defamatory statement subjected Plaintiff to hatred, distrust, ridicule, contempt, or disgraced and injured Plaintiff personally and professionally. *Id.* ¶¶ 90, 92, 93, 94.

Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor, the undersigned finds that Plaintiff has sufficiently plead a claim for defamation per se, under a theory

of both slander and libel. Here, Plaintiff alleges that Defendant's statements were made in writing and in videos on Instagram and Twitter. Additionally, sexual assault of a minor is a crime that can have a harmful effect on Plaintiff's personal and professional reputation, and his standing within the music industry. Plaintiff has further alleged that the statements are false and has supported his allegations with, among other things, a memorandum from the BSO (Assistant State Attorney) declining criminal prosecution as there is "not a reasonable likelihood of conviction." (ECF No. 38-1 at 9). Moreover, contrary to Defendant's argument in the Motion, Plaintiff pled that Defendant published her statements with reckless disregard for their truth and with malice. Thus, the allegations in the First Amended Complaint sufficiently plead libel per se, slander, per se, and defamation per se. Accordingly, the Motion is denied as to Counts 1, 3, and 4.

   4. *Count 2 (Trade Libel)*

A claim of trade libel requires: (i) a falsehood; (ii) that has been published or communicated to a third person; (iii) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff; (iv) the falsehood, in fact, plays a material and substantial part in inducing others not to deal with the plaintiff; and (v) special damages are proximately caused as a result of the published falsehood. *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006).

In Count 2 of the Fist Amended Complaint, Plaintiff alleges that: (i) Defendant published falsehoods, which were, and are, openly and freely communicated to any third party visiting the internet on YouTube, Instagram, Twitter, Blog sites The Shade Room, DJ Akademiks, and through any online search of either "Doodie Lo" or "FTN bae;" (ii) the falsehoods are directed at Plaintiffs' customers and those considering buying music or booking performances from Plaintiff; (iii) Defendant's falsehoods play a material and substantial part in inducing others not to deal with Plaintiff as Plaintiff has lost performance and contract opportunities; and (iv) Plaintiff was "greatly

injured in reputation and credit and special damages were proximately caused as a result of Defendant's falsehood, [including suffering] great loss of customers, fan base, and [deprivation] of great gains and profits, which otherwise Plaintiff would have made, and has otherwise sustained loss and injury, in an amount to be proven but regardless exceeding $1 [million]." (ECF No. 35 ¶¶ 76, 77, 79, 81).

Although the alleged defamatory statements do not concern Plaintiff as a recording artist, the alleged statements on their face involve the crime of sexual assault on a minor, which is an infamous crime that could have a harmful effect on Plaintiff's personal and professional reputation. Plaintiff also alleges that Defendant's statements were directed at Plaintiff's customers and that the statements played a material and substantial part in inducing others not to deal with Plaintiff. Moreover, Plaintiff alleges lost profits exceeding $1 million. Construing the allegations in the light most favorable to Plaintiff, the undersigned finds that he has sufficiently plead the elements of a claim for trade libel. Accordingly, the Motion is denied as to Count 2.

    5. *Count 5 (Tortious Interference with Business Relations)*

Count 5 alleges a claim for tortious interference with business relations. Under Florida law, a claim for interference with a business relationship requires: (i) the existence of a business relationship; (ii) defendant's knowledge of that relationship; (iii) an intentional and unjustified interference with the relationship; and (iv) injury resulting from the breach of the relationship. *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999); *see also Klayman*, 22 F. Supp. 3d at 1256. A "business relationship" requires a relationship with a particular party, and not just a relationship with the general business community. *Dunn*, 193 F.3d at 1191.

Defendant summarily argues that Count 5 is precluded by "Florida's single action/single publication" doctrine. (ECF No. 37 at 8). Generally, in Florida, a single publication gives rise to a single cause of action. *Klayman*, 22 F. Supp. 3d at 1256 (citation omitted). Consequently, "[t]he

9

various injuries resulting from it are merely items of damage arising from the same wrong." *Id.* (citation omitted). This rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm. *Id.* Pursuant to the rule, courts dismiss concurrent counts for related torts based on the same publication and underlying facts as the defamation count. Moreover, when claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event. *Id.* (citation omitted).

Here, Plaintiff incorporates the prior allegations of the First Amended Complaint and further asserts that: (i) he had business relations with various parties (including record labels and other recording artist) for services, business relations with his current label and obligations, as well business relations with prospective parties who wished to engage in procuring the Plaintiff in the entertainment industry; and (ii) Defendant intentionally and unjustly interfered with Plaintiffs' existing and prospective business relations by falsely publicly accusing Plaintiff of sexually assaulting her minor son. (ECF No. 35 ¶¶ 95, 96, 98).

Although the crux of the claim for tortious interference with business relations is the alleged defamatory statements that are the basis for the defamation claim, Plaintiff has plead additional facts regarding business relations beyond the elements of defamation. Accordingly, the undersigned finds that at this early stage of the proceedings—where the Court must evaluate the First Amended Complaint and draw all inferences in Plaintiff's favor—Plaintiff has sufficiently plead the elements of tortious interference with business relations stemming from alleged defamatory statements. Accordingly, the Motion is denied as to Count 5. *Cf. Klayman*, 22 F. Supp. 3d at 1256 (granting summary judgment for claim of tortious interference with contract where there was no evidence of any independent facts distinct from defamation claim).

10

  6. *Count 6 (Intentional Infliction of Emotional Distress)*

  Count 6 of the First Amended Complaint alleges intentional infliction of emotional distress. (ECF No. 35 ¶¶ 100-09). Intentional infliction of emotional distress requires that: (i) the wrongdoer's conduct be intentional or reckless, that is, she intended the behavior when she knew or should have known that emotional distress would likely result; (ii) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (iii) the conduct caused emotional distress; and (iv) the emotional distress was severe. *Klayman*, 22 F. Supp. 3d at 1256.

  As with Count 5 (tortious interference with business relations) discussed above, Defendant argues that Count 6 is precluded by "Florida's single action/single publication" doctrine. (ECF No. 37 at 8-9). Unlike Count 5, however, the undersigned finds that Count 6 does not allege any facts distinct from the defamation claim. Rather, Plaintiff generally alleges "outrageous conduct" by Defendant who acted "recklessly and intentionally" causing Plaintiff to suffer severe emotional distress. *See generally* (ECF No. 35 ¶¶ 100-109). Count 6 relies on the same facts and cause of action as the above defamation counts. Accordingly, the Motion is granted as to Count 6. *See, e.g.*, *Klayman*, 22 F. Supp. 3d at 1256 (granting summary judgment and dismissing count for emotion distress where it was barred by Florida's single action rule).

### III. CONCLUSION

  For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (ECF No. 37) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **DENIED** as to Counts 1, 2, 3, 4, and 5. The Motion is **GRANTED** as to Count 6. Defendant must serve and file and answer to the remaining Counts **within 14 days of her Notice** advising the Court whether she will retain new counsel or proceed without an attorney. *See* (ECF No. 51 at 9).

Furthermore, within **two business days** from that date of this Order, Plaintiff must serve Defendant via First Class Mail addressed to 360 NW 36th Avenue, Pompano Beach, FL 33069 and file a Notice of Service confirming same.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on December 20, 2022.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
All Counsel of Record